[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Kenneth Ney doing business as KJN Restoration Co., appeals from a September 14, 2000 final decision of James T. Fleming, Commissioner of the Department of Consumer Protection ("the department"), ordering the plaintiff to pay a penalty and restitution and granting other relief to a consumer-complainant, Stanley Dziedzic.
The record as submitted by the department shows the following. Dziedzic, a resident of Hamden, Connecticut, contracted on July 28, 1997 to have the plaintiff, who was registered with the department, perform roofing work at his home. The contract price was $5700 plus tax for a total amount of $6042. (Return of Record ("ROR"), Item D16; Item E, p. 30.) The plaintiff completed the work and was paid in full on September 26, 1997. (ROR, Item D16.) Within a week of completion, Dziedzic had to call the plaintiff back as leaking had developed from the roof into his house. The plaintiff made at least seven additional trips to the Dziedzic home in a failed effort to remedy the situation. (ROR, Item E, pp. 45-48, 87.) One issue in contention was whether leaking around a sky light, installed some years before by Dziedzic himself, was attributable to the plaintiff's work. The plaintiff claimed that this was the major source of the leaks and that he was not responsible for the installation of the sky light. He refused to return to the house to make further repairs around the sky light. (ROR, Item E, p. 47, 87-88, 92.)
On July 7, 1998, Dziedzic filed a complaint with the department. (ROR, Item D17; Item E, p. 48.) The department assigned Robert Nakano to investigate the allegations of the complaint. In addition, Dziedzic asked the Hamden building inspector to investigate. In January 1999, the building inspector issued a report finding that the roofing problems had caused water damage in the house. (ROR, Item D8.)
In February 1999, the manufacturer of the roofing materials, U.S. Intec, sent an investigator, John Schillaci, to Dziedzic's home. Schillaci concluded that the leaks were due largely to "aspects of installation" and were not the result of a manufacturing defect in the materials. (ROR, Item D7.) Nakano and Schillaci also met and viewed Dziedzic's roof on April 14, 1999, where these installation problems were reviewed. Schillaci concluded that the costs of repairing the roof could exceed the cost of a new roof (ROR, Item D3.)[1]
Two weeks later, Nakano visited the Dziedzic residence with a representative of Norconn Services, a U.S. Intec approved installer. Norconn subsequently provided a written estimate to remedy the situation CT Page 16406 in the amount of $14,831.52. (ROR, Item D9.) The estimate noted that merely repairing the existing structure would not be "cost effective" and he was "providing [him] with the only course of action that should be considered." (ROR, Item D9.) Dziedzic also made available to Nakano additional estimates to repair the interior damage that totaled $2778. (ROR, Items Dl1, D12, and D13.)
Nakano's report was completed in June, 1999. (ROR, Item D3.) On February 17, 2000, pursuant to General Statutes § 4-182(c), the department conducted a compliance meeting with the plaintiff. The department must hold these meetings before taking any administrative action against a registrant's license; it also provides an opportunity for possible settlement of the complaint. One of the plaintiff's attorneys, Thomas Airone, attended the conference. He reviewed the file and discussed issues in the case with department officials, including Nakano. (ROR, Item E, pp. 6-7.) When the case was not resolved, on April 18, 2000, the department filed a formal complaint against the plaintiff for violation of the Home Improvement Contractor Act, Chapter 400, General Statutes, and the Unfair Trade Practices Act, Chapter 735a, General Statutes. (ROR, Item D1.)
A hearing was held regarding the allegations of the complaint on June 22, 2000. During the course of the hearing, Nakano was called as a witness by the department. The department attorney offered into evidence the investigative report, ROR, Item D3, complied by Nakano, and the plaintiff's counsel objected on the ground of hearsay. The counsel stated that he had never seen the Nakano report before, and he had not been informed by his associate, Airone, that such a report existed at the time of the compliance conference. He initially asked for a recess to review the document with his client, but neither before or after his hearsay objection was ruled upon, did he continue to ask for a recess, and the hearing proceeded. The attorney merely asked that his objection be noted for the record. (ROR, Item E, pp. 5-7.)
After the hearing, a proposed decision was issued by the hearing officer on August 22, 2000. The hearing officer found five violations of law[2] and recommended that the department order the plaintiff to cease and desist from further violations of the Home Improvement Act. He was ordered to pay a civil penalty of $2750, and make restitution to the department on behalf of Dziedzic in the amount of $17,609.52, the cost of a new roof and the inside fix-up charges. (ROR, Item C.) Over the plaintiff's objections, the commissioner of the department, Fleming, adopted the hearing officer's proposed findings of fact, conclusions of law and orders as his final decision on September 14, 2000. (ROR, Item A.) This appeal followed.[3]
CT Page 16407
The plaintiff has raised only two issues in the administrative appeal — that the civil penalty was incorrectly calculated and that the Nakano report was improperly admitted into evidence by the hearing officer. The standard to review these issues is that of the substantial evidence test. Rivera v. Liquor Control Commission, 53 Conn. App. 165,169 (1999):
 We review the issues raised by the plaintiff in accordance with the limited scope of judicial review afforded by the UAPA. . . . Under § 4-183(j)(5) and (6) of the UAPA, judicial review of administrative fact-finding is governed by the substantial evidence rule. . . . An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . .
(Citations omitted; internal quotation marks omitted.)
"The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . ." DomesticViolence Services of Greater New Haven, Inc. v. FOIC, 47 Conn. App. 466,470 (1998). Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . ." (Citations omitted; internal quotation marks omitted.) MacDermid, Inc. v. Dept. of EnvironmentalProtection, 257 Conn. 128, 137 (2001).
On the first issue, the hearing officer proposed, and the commissioner of the department approved, a fine in the amount of $2750 based on General Statutes § 20-427(d), which provides:
 The commissioner may, after notice and hearing . . . impose a civil penalty on any person who . . . violates any of the provisions of this chapter. . . . Such penalty shall be in an amount not more than five hundred dollars for a first violation of this subsection, not more than seven hundred fifty dollars for a second violation of this subsection . . . and not more than one thousand five hundred dollars for a third or subsequent violation of this subsection. . ..
The plaintiff claims that since he had never been subject to sanction by the department before the Dziedzic complaint, his fine, if any, should CT Page 16408 have been $500. The plaintiff reads General Statutes § 20-427(d) too narrowly. The penalty is to be assessed for each "violation," not for each prosecution. The plain language of the statute must be followed. As our Supreme Court has stated: "We presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions." (Citations omitted.) In re Baby Z., 247 Conn. 474, 522 (1999).
Based on this reading of the statute, the hearing officer had the authority to assess a penalty in the amount of $5750 for the five violations found, but only assessed a fine of $2750. Under these circumstances, the court cannot find an abuse of discretion in the hearing officer's assessment of the penalty.
 If the penalty meted out is within the limits prescribed by law, the matter lies within the exercise of the [agency's] discretion and cannot be successfully challenged unless the discretion has been abused. . . . Sentencing is an inherently fact bound inquiry. In an administrative appeal, a reviewing court can do no more, on the factual questions presented, than to examine the record to determine whether the ultimate findings were supported, as the statute requires, by substantial evidence. . . . In other words, [o]ur ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . .
(Citations omitted; internal quotations omitted.) Wasfi v. Dept. ofPublic Health, 60 Conn. App. 775, 790-91 (2000), cert. denied,255 Conn. 932 (2001).
The plaintiff secondly contends that the Nakano report was erroneously admitted into evidence at the administrative hearing. The plaintiff specifically refers to Nakano's narrative of his conversation with Schillaci, the roofing material representative, on April 14, 1999, where Schillaci stated that a new roof might cost less than the alternative, an extensive repair. (ROR, Item D3.) This evidence is said by the plaintiff to be the only basis upon which the restitution order of the hearing officer to replace the roof might be based. The plaintiff concludes this evidence was inadmissible hearsay and violative of his due process rights to a fair hearing.
The parties agree that in general there is no bar to the admission of hearsay evidence at an administrative hearing. Griffin v. Muzio, CT Page 1640910 Conn. App. 90, 93-94, cert. denied, 203 Conn. 805 (1987). The plaintiff claims an exception to this rule, as set forth in Carlson v.Kozlowski, 172 Conn. 263, 267 (1977): "If hearsay evidence is insufficiently trustworthy to be considered `substantial evidence' and it is the only evidence probative of the plaintiff's culpability, its use to support the agency decision would be prejudicial to the plaintiff, absent a showing . . . that the appellant knew it would be used and failed to ask the commissioner to subpoena the declarants."
There are at least two reasons why the exception does not apply here. First, the department introduced, in addition to Schallaci's statement in the Nakano report, the letter sent by Norconn. (ROR, Item D9.) This letter detailed work to be done on the roof and gave an estimate. The statement that "repairs in this situation would not be cost effective so I am providing you with the only course of action that should be considered" is contested by the plaintiff as too conclusory. (ROR, Item D9.) In the context of the record, the court concludes, however, that the Norconn letter is additional evidence "probative of the plaintiff's culpability." Carlson v. Kozlowski, supra, 172 Conn. 267. The document is quite detailed on the problems with the roof and refers to the need to channel water into the gutter. This is one of the problems noted by Schallaci.
Further, the plaintiff devoted much of his brief to the claim that his attorney never knew the department was going to make use of the Nakano report.[4] This is an attempt to meet one of the requirements ofCarlson, as quoted above — that the admission of the Nakano report cannot be justified on the failure of the plaintiff to subpoena Schillaci, since he did not know of the department's intentions. This lack of knowledge[5] does not fit the holding in Carlson in this case, however. The plaintiff's attorney at first asked for a recess to review the Nakano report, and then, after some oral argument, commenced participation in the hearing again without taking any recess at all. (ROR, Item E, pp. 5-7.) No continuance was sought by the plaintiff's attorney to subpoena Schallaci.
When such allegedly surprising evidence is disclosed only at the administrative hearing, the plaintiff must ask for a continuance in order to preserve his claim of illegal procedure. O'Sullivan v. DelPonte,27 Conn. App. 377, 385 (1992) ("The plaintiff's failure to request a continuance indicates a willingness to continue with the proceeding")[6]Gray v. Adduci, 532 N.E.2d 1268, 1268 (N.Y. 1988) ("[P]etitioner could have sought an adjournment to subpoena the [police] officer."). InAltholtz v. Dental Commission, 4 Conn. App. 307, 309 (1985), one element of the ruling allowing the hearsay testimony was that "[a]t no point did the plaintiff . . . request a recess or continuance in order to secure CT Page 16410 the presence at the hearing of . . . [the experts] who had prepared the reports. . . ." The Supreme Court case of Richardson v. Perales,402 U.S. 398 (1971) was the precedent that led to the rule on hearsay as set forth in Carlson v. Kozlowski, supra Richardson upheld under the Federal Administrative Procedure Act and due process the admission of expert reports at an administrative hearing. The late notice that there were reports in the file "afforded no real obstacle . . . a supplemental hearing could be requested." Id., 404-05.
The hearing officer did not err in admitting into evidence the report and statements claimed as hearsay. The court has resolved the issues raised unfavorably to the plaintiff, and therefore the appeal is dismissed.
Henry S. Cohn, Judge